IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| J.E. DUNN CONSTRUCTION COMPANY, as successor in interest by merger to DUNN SOUTHEAST, INC. d/b/a R.J. GRIFFIN & COMPANY, and ARCH INSURANCE COMPANY, | § § § § § § | |
| Plaintiffs, | § | Civil Action No. _____ |
| v. | § § § | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | § § § § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT

Plaintiffs J.E. DUNN CONSTRUCTION COMPANY, as successor in interest to DUNN SOUTHEAST, INC. d/b/a R.J. GRIFFIN & COMPANY ("Dunn") and ARCH INSURANCE COMPANY ("AIC"), for their Original Complaint against NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("National Union"), state as follows:

### I.

### PARTIES

1. Plaintiff Dunn is a corporation incorporated under the laws of Missouri with its principal place of business in Georgia.

2. Plaintiff AIC is an insurance company organized under the laws of Missouri with its principal place of business in New Jersey.

3. Defendant National Union is an insurance company organized under the laws of Pennsylvania with its principal place of business in New York. Defendant National Union is doing

business in Texas, and may be served by serving: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## II.

## JURISDICTION AND VENUE

4. There is complete diversity among the parties, and the amount in controversy, exclusive of interests and costs, is in excess of $75,000. Accordingly, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a). The facts and events giving rise to this suit arose out of a construction project in Port Arthur, Texas and thus occurred in this District and Division.

## III.

## FACTUAL ALLEGATIONS

6. This lawsuit is an insurance coverage dispute arising out of a lawsuit filed in the 172nd Judicial District Court of Jefferson County, Texas, Cause No. E180-230, styled *IASIS Healthcare Holdings, Inc., et al v. Dunn Southeast, Inc. d/b/a R. J. Griffin & Company, Anchor Roofing Systems, Ltd., et al.* (the "Underlying Lawsuit").

7. In the Underlying Lawsuit, Plaintiff IASIS Healthcare Holdings, Inc. ("IASIS") alleges damages in excess of $44,000,000 resulting from defects and deficiencies in the construction of the Medical Center of Southeast Texas, 2555 Jimmy Johnson Boulevard, Port Arthur, Jefferson County, Texas (the "Project" or "Medical Center"). The alleged poor construction is said to have caused property and business interruption damages to the Medical Center when it was struck by Hurricane Rita, on September 24, 2005, and Hurricane Ike, on September 13, 2008.

8. Plaintiff Dunn was the general contractor for the Project and is a Defendant in the Underlying Lawsuit. Dunn entered into a contract with the owner, Southeast Texas Hospital, LP, by its general partner IASIS, for the construction of the Medical Center. Dunn further entered into a written subcontract agreement with Anchor Roofing Systems, Ltd. ("Anchor") to perform roofing and lightweight insulating concrete work on the Project. It also entered into a subcontract with Allied Electrical Contractors ("Allied") to perform electrical work. Anchor and Allied (collectively, the "Subcontractors") allegedly performed work which resulted in property damage to portions of the roofs of the Project, including, but not limited to, damage during Hurricanes Rita and Ike. As a result of that damage, IASIS filed the Underlying Lawsuit.

9. The subcontracts between Dunn and the Subcontractors required that Dunn be added as an additional insured on the Subcontractors' liability insurance policies, including commercial general liability and umbrella liability policies. The insurance requirements in the subcontracts also require that the insurance provided by the Subcontractors "shall be primary and non-contributing to any other insurance maintained by [IASIS] or [Dunn]."

10. Anchor had Dunn named as an additional insured on its policies, including Interstate Fire and Casualty Company ("Interstate") Commercial General Liability ("CGL") Policies Nos. (a) GLI 1111133 for the period of October 1, 2003 to October 1, 2004; (b) GLI 1112008, for the period of October 1, 2004 to October 1, 2005; (c) AGL 1400524, for the period of October 1, 2005 to October 1, 2006; (d) AGL 140110, for the period of October 1, 2006 to October 1, 2007; and (e) DGL 10000086, for the period of October 1, 2007 to October 1, 2008. Pursuant to the terms of each of those policies, Dunn was included as an additional insured with respect to liability arising out of Anchor's work for Dunn. Anchor's umbrella liability policies were also issued by Interstate for

corresponding years and provide coverage in excess of the Interstate CGL policies in the event of exhaustion.

11. Similarly, Allied had Dunn named as an additional insured on its CGL policies, including American Casualty Company of Reading, PA ("American Casualty") CGL Policy No. C2049298962, effective June 19, 2005 to June 19, 2006. Pursuant to the terms of that policy, and subsequent renewal policies, Dunn was included as an additional insured with respect to liability specifically resulting from Allied's work for Dunn which is the subject of the written subcontract agreement. Mt. Hawley Insurance Company provided umbrella liability coverage to Allied for the same policy period under Policy No. MXL 0359587.

12. Dunn tendered its defense in the Underlying Lawsuit to Interstate and American Casualty. Despite their obligation to provide Dunn with a complete defense and indemnity as Dunn's primary insurers under Texas law, Interstate and American Casualty have unilaterally limited their defense of Dunn and have agreed to pay only a small fraction of the total defense costs. Among other things, the insurers for the Subcontractors allege that they owe Dunn additional insured coverage for only 24 months post-completion of the project, that they do not owe any defense for claims relating to Hurricane Ike, and that they may seek to recoup any fees and costs relating to Hurricane Ike from Dunn's own insurers, Plaintiff AIC and Defendant National Union.

13. As a result of the Subcontractor insurers' failure to provide a full and complete defense to Dunn, AIC and National Union were required to step forward and provide for Dunn's defense. AIC did so, under its CGL policy No. 51PKG2005601 issued to Dunn's predecessor effective December 31, 2004 to December 31, 2005. This policy was in effect at the time of Hurricane Rita, but was not in effect at the time of Hurricane Ike. Defendant National Union, by

contrast, whose relevant policy was in effect at the time of Hurricane Ike, has failed and refused to contribute to Dunn's defense as it is required to do under Texas law.

14. Defendant National Union, more specifically, issued its CGL policy Nos. GL 175-73-40 and GL 179-56-60, effective December 31, 2005 to December 31, 2006 and December 31, 2006 to December 31, 2007, respectively. National Union further issued policy Nos. GL 161-72-98 and GL 207-14-08, effective December 31, 2007 to December 31, 2008 and December 31, 2008 to December 31, 2009, respectively. The National Union policies each have liability limits of $2 million each occurrence and $4 million in the aggregate for products-completed operations. Policy No. GL 161-72-98 was in effect at the time of Hurricane Ike.

15. The Underlying Lawsuit combines in a single petition causes of action against Dunn relating to damages incurred at the time of both Hurricane Ike and Hurricane Rita. AIC Policy No. 51PKG2005601, in effect at the time of Hurricane Rita, and National Union policy No. GL 161-72-98, in effect at the time of Hurricane Ike, both provide as follows:

> When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". *If no other insurer defends, we will undertake to do so,* but we will be entitled to the insured's rights against all those other insurers.

(Emphasis added).

16. Here, the primary Subcontractor insurers Interstate and American Casualty have failed and refused to provide Dunn with a full and complete defense in the Underlying Lawsuit. Accordingly, it became the duty of both AIC and National Union to assume Dunn's defense. Plaintiff AIC has done so, despite the fact that absent the underlying Plaintiff's decision to combine damages from two separate hurricanes into a single lawsuit, it would have no obligation whatsoever with respect to damages or claims arising from Hurricane Ike and that obligation would fall squarely

on National Union.

17. Defendant National Union, unlike AIC, has failed and refused to contribute to Dunn's defense. National Union relies on the fact that, theoretically, the insurers for one or both of the Subcontractors owe a 100% defense to Dunn in the Underlying Lawsuit for claims relating to both Hurricanes. Until such time as the Subcontractor insurers fully assume that obligation, however, which they have so far refused to do, National Union must honor its Policy and defend its insured.

18. As a result of National Union's breach of its obligations owed to Dunn, Dunn and AIC have been damaged in the amount of the defense costs that National Union has failed and refused to pay, together with attorneys fees incurred in pursuing insurance coverage from National Union.

## IV.

## CAUSES OF ACTION

### COUNT ONE – DECLARATORY JUDGMENT

19. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 18 above.

20. Pursuant to 28 U.S.C. §§ 2201 and 2202 and FRCP 57, Dunn and AIC invoke this Court's power to render a declaratory judgment. As set forth above, there is an actual controversy concerning the insurance coverage available to Dunn as the named insured under the National Union policies for the defense of claims asserted against Dunn in the Underlying Lawsuit filed by IASIS. AIC, moreover, is equitably subrogated to Dunn's interest in any recovery of defense costs and/or is entitled to reimbursement from National Union for amounts paid in excess of its own share of the defense obligation.

21. The terms of the relevant National Union policies are clear and unequivocal. National Union has a duty to defend Dunn when the primary Subcontractor insurers are failing to do so, and National Union has failed and refused to assume that obligation.

22. Dunn and AIC are entitled to a declaration by this Court that National Union owes Dunn a full defense in the Underlying Lawsuit as a result of the property damage caused by the alleged construction defects and deficiencies at the Project, and that National Union is obligated to reimburse Dunn and AIC for all defense costs which have been paid by Plaintiffs in excess of the amount which would have been paid had National Union properly assumed its obligations.

23. Dunn and AIC are further entitled to a declaration by this Court that, to the extent that the Subcontractor insurers do not provide Dunn with a full and complete defense and indemnity as to claims resulting from Hurricane Ike in the Underlying Lawsuit, any such shortfall is the responsibility of Defendant National Union and not AIC.

## COUNT TWO – BREACH OF CONTRACT

24. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 23 above.

25. Dunn has complied with all conditions precedent to coverage under the National Union policies.

26. Despite its obligations under the policies, National Union has failed and refused to fulfill its obligations to Dunn to provide for Dunn's defense in the Underling Lawsuit.

27. The failure of National Union to fulfill its contractual obligations constitutes a material breach of one or more of the National Union policy contracts, which has caused damage to Dunn and to AIC.

28. As a result of National Union's breach of its policy contracts, Dunn and its subrogee AIC is entitled to recover from National Union all damages, including defense costs incurred in defending the Underlying Lawsuit, that have been incurred as a result of National Union's material breach of contract.

## COUNT THREE – VIOLATION OF TEXAS INSURANCE CODE

29. Plaintiffs reallege and incorporate by reference the allegations set out in Paragraphs 1 through 28 above.

30. National Union's failure to promptly reimburse or pay defense costs in the Underlying Lawsuit violates the Prompt Payment of Claims provisions of Chapter 542 of the Texas Insurance Code, entitled Dunn and AIC to recovery of the statutory penalty of 18 percent, together with their reasonable attorneys fees incurred in pursuing National Union.

## COUNT FOUR – AIC'S CLAIM FOR REIMBURSEMENT

31. Plaintiffs reallege and incorporate by reference the allegations set out in Paragraphs 1 through 30 above.

32. Plaintiff AIC has involuntarily incurred substantial expenses in providing a defense to Dunn in the Underlying Lawsuit.

33. Defendant National Union, by contrast, has made no contribution to Dunn's defense.

34. In the event that this Court determines that National Union owed/owe(s) a duty to defend Dunn in the Underlying Lawsuit or otherwise breached its policies of insurance, National Union is legally obligated to reimburse AIC for National Union's share of the expenses AIC has incurred for Dunn's defense. AIC has a right to such reimbursement under the doctrines of contribution, equitable subrogation, and contractual subrogation.

35. All conditions precedent to AIC obtaining such relief have been performed or have occurred.

## COUNT FIVE – ATTORNEYS FEES

36. Plaintiffs reallege and incorporate by reference the allegations set out in Paragraphs 1 through 35 above.

37. Due to National Union's failure to properly assume its duty to defend Dunn in the Underlying Lawsuit, Plaintiffs have been forced to retain the services of the undersigned law firm to pursue this action. Plaintiffs have agreed to pay a reasonable fee for services necessary to be rendered in this action.

38. Pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code (Breach of Contract) and Chapter 542 of the Texas Insurance Code (Prompt Payment of Claims Act), Plaintiffs are entitled to an award of reasonable attorneys' fees in an amount to be established at trial.

## V.

## PRAYER

39. For these reasons, Plaintiffs ask that they be granted the following relief from this Court:

    A. A declaration by this Court that National Union owes Dunn a full and complete defense in the Underlying Lawsuit when such a defense is not being provided by the Subcontractor insurers, and a full and complete indemnity as to any damages determined to have occurred during the period of the National Union policies.

    B. A judgment awarding Plaintiffs all damages they have suffered as a

      result of National Union's breach of its insurance policy contracts.

C.     A judgment awarding Plaintiffs all damages they have suffered as a result of National Union's violation of the Texas Insurance Code, including any additional damages to which it may be entitled.

D.     A judgment that Plaintiffs are entitled to recover their costs and expenses, including attorneys' fees incurred in prosecuting this action and in pursuing a full defense and indemnity from National Union.

E.     A judgment awarding Plaintiffs their costs and pre-judgment and post-judgment interest in the maximum amount as allowed by law.

F.     Such other and further relief as the Court deems just and equitable under the circumstances.

Respectfully submitted,

*/s/ Brett A. Smith*
**BRETT A. SMITH**
State Bar No. 18542275
bsmith@feesmith.com
Attorney-in-Charge

**TIMOTHY R. GEORGE**
State Bar No. 07806950
tgeorge@feesmith.com

FEE, SMITH, SHARP & VITULLO, L.L.P
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240
(972) 934-9100
(972) 934-9200 [Fax]

**ATTORNEYS FOR PLAINTIFFS**